Ernest G. WILSON and Mary Ann Wilson, his wife, Plaintiffs,

v.

UNITED STATES of America, Defendant.

James Richard KILLION and Henrietta Killion, his wife, Plaintiffs,

v.

UNITED STATES of America, Defendant.

C. E. RONE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Donald RONE and Bethel Rone, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. S 66 C 44, 66 C 50, 66 C 65, 66 C 76.

United States District Court
E. D. Missouri,
Southeastern Division.

April 6, 1967.

Ward & Reeves, Caruthersville, Mo., for plaintiffs.

Elliott H. Kajan, Tax Division, Department of Justice, Washington, D. C., for defendant.

## MEMORANDUM

MEREDITH, District Judge.

This Court has jurisdiction under Title 28, U.S.C. § 1346(a), after a denial by the Internal Revenue Service of timely claims for refund made by plaintiffs.

The parties have stipulated as to the following facts: On or about August 25, 1959, the Killion-Rone-Wilson Gin Company, a partnership, was incorporated under the laws of Missouri. The partnership transferred its assets to the corporation in exchange for corporate stock, and the shareholders of the stock were and are the former partners (although not in equal shares). The corporation commenced business on September 1, 1959, and on September 25, 1959, the shareholders timely filed Form 2553, by which they elected to be taxed under §§ 1371 through 1377 of the Internal Revenue Code of 1954 (26 U.S.C., Subchapter S, §§ 1371–1377), i. e., as a Subchapter S corporation.

On or about April 29, 1960, the corporation filed with the District Director in St. Louis, Missouri, its first United States Small Business Corporation Return of Income (Form 1120–S) for the

90

taxable year beginning September 1, 1959, and ending March 31, 1960. On May 20 the shareholders held a special meeting and voted to change to a fiscal year ending May 31. Pursuant to this decision, the corporation submitted an Amended United States Small Business Return of Income on or about June 14, 1960. The District Director did not give effect to the amended return. He determined that the taxable year for the corporation was the year ending March 31, and refigured the plaintiffs' allocable share of the corporation's undistributed taxable income on that basis. He assessed the deficiencies and credited the over-assessments in November 1964 and on or about January 20, 1965, plaintiffs paid the deficiencies, plus interest, as required by the statute. On or about July 6, 1965, plaintiffs filed Claims for Refunds; they received notice of disallowance of these claims on or about January 18, 1966.

The case was originally brought as four separate cases: S 66 C 44, S 66 C 50, S 66 C 65 and S 66 C 76; but, because the issues in each case involve the identical questions of law and fact, and only the amounts claimed by each plaintiff are different (because they hold unequal shares), the four cases were consolidated by agreement and order dated January 31, 1967.

The issue is phrased by the plaintiffs as: Did the company irrevocably establish its taxable year as ending March 31st despite timely filing of an amended return electing a taxable year ending May 31st? Defendants argue yes, plaintiffs argue no on the grounds that (1) regulation 1.441–1(b) (3) gives a new taxpayer the right to select any taxable year in his first return, and (2) a timely amendment becomes a part of a taxpayer's first return and, therefore, should be given effect.

■ There is no disagreement as to the rights conferred by regulation 1.441–1(b) (3) or the timeliness of the filing of the amendment, and, therefore, the issue becomes: Is a timely amendment which alters the date on which the taxable year

of a corporation ends to a later date which, had it been chosen in the original return, would have been permissible, effective to alter the date on which the taxable year shall end thereafter? This Court holds that it is.

One of the earliest cases in which the effect of a timely tax return amendment was discussed was Haggar Co. v. Helvering, 308 U.S. 389, 60 S.Ct. 337, 84 L.Ed. 340 (1940). The decision in that case turned on whether a capital stock tax return could be amended within the time fixed for filing the return. The result of holding the amendment effective in that case was to permit a change in the declared value of capital stock, which was the basis of computation for capital stock and excess profits taxes in force under the National Industrial Recovery Act of 1933. The Court stated:

" 'First return' thus means a return for the first year in which the taxpayer exercises the privilege of fixing its capital stock value for tax purposes, and includes a timely amended return for that year. A timely amended return is as much a 'first return' for the purpose of fixing the capital stock value in contradistinction to returns for subsequent years, as is a single return filed by the taxpayer for the first tax year." Haggar v. Helvering, supra, at 395, 60 S.Ct. at 340.

"To construe 'first return' as meaning the first paper filed as a return, as distinguished from the paper containing a timely amendment, which, when filed is commonly known as the return for the year for which it is filed, is to [violate one] of the most elementary principles of statutory construction." Id. at p. 396, 60 S.Ct. at 340.

The rule was applied the following year and extended to include amendments filed within the time for filing original returns as extended by the Commissioner of Internal Revenue. A. J. Crowhurst & Sons, Inc., v. Commissioner of Internal Revenue, 109 F.2d 131 (3rd Cir. 1940), and again applied by Swan, Circuit Judge, in Lerner Stores Corp. v. Commissioner of Internal Revenue, 118

F.2d 455 (2nd Cir. 1941), who made a general statement that "Up to the time when the return is due, the taxpayer may change its judgment * * *" (at p. 457). In 1964 the principle was applied to the question of whether a taxpayer could change the method by which he computed invested capital. The United States Court of Claims held that taxpayer, by filing timely amended returns, could shift from one method to the other "at anytime up to the expiration of the period of limitations (for filing) for the years involved." Charles Leich and Co. v. United States, 329 F.2d 649, 165 Ct. Cl. 127 (1964) at 656.

Courts have uniformly refused to apply this principle in cases in which the amendment was not timely. In J. E. Riley Investment Co. v. Commissioner, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36 (1940), taxpayer, an investment company owning gold mines, sought to change its method of computation of income by an amendment filed nearly a year after the first return was due. The Court said at page 58, 61 S.Ct. at page 96, *"Haggar * * *,* would compel the conclusion that had the amended return been filed within the period allowed for filing the original return, it would have been a 'first return' * * * But we can find no statutory support for the view that an amendment making the election provided for in that section may be filed as of right after the expiration of the statutory period for filing the original return." This decision affirmed that of the appellate court (110 F.2d 655, 9th Cir. 1940), which noted "It would seem, indeed, that the taxpayer may make a substituted return of that sort (timely amended return) *as a matter of right".* Id. at p. 657. (Emphasis added.)

The issue has been commented on by the Third Circuit, "the 'first return' * * * is that return, original or amended, made for the first year in which the taxpayer exercises its privilege * * * when filed within the time and only within the time prescribed by the statute. It follows that the petitioner's attempted amendment was not timely and therefore cannot serve as the return required by the statute.", Wm. B. Scaife & Sons Co. v. Commissioner, 117 F.2d 572 (3rd Cir. 1941), at 574, and again in Boone County Coal Corp. v. United States, 37 F.Supp. 327 (S.D. W.Va.1941), the Court refused to give effect to an amended return making an election of charging off tangible drilling costs because it was "filed after the expiration of the statutory period for filing the original return, and after the expiration of any period for which an extension of time for filing such return could legally have been granted by the Commissioner of Internal Revenue."

The Court further finds that the plaintiffs are not trying to avoid taxes in ending their business year on May 31st, but there are good and valid business reasons for ending the year on that date. The cotton-ginning business starts in September and the actual ginning ends usually in January. Thereafter, the cotton has to be sold by the cotton ginner, which takes several months. The cotton gins run day and night during the ginning season. When this ends, usually in January, it takes several months in which to repair the gin for the next season. This means the repairs are completed in the year in which the profit, if any, is made and makes a sensible arrangement. May 31st is a proper time in the cotton-ginning business to end the year.

The issue is one of first impression in this circuit, but from the above cases it appears that there is a general consensus among other circuits that "the taxpayer should be permitted to do what he had the right to do in the first instance.", Lucas v. Sterling Oil & Gas Co., 62 F.2d 951 (6th Cir. 1933), and that, therefore, the question of whether or not an amendment is part of a "first return" must be resolved in terms of whether or not the amendment was filed within the statutory period for filing the original return, as suggested by *Haggar* and *Riley.*

Timely filing of the amendment in the instant case is uncontroverted. From

the cases cited above, it appears that the principle of *Haggar*, giving effect to timely amendments as part of a "first return" is dispositive of this case. We hold that the District Director erred in refusing to accept the timely amended return and the consequences of the election made therein.

A judgment for plaintiffs will be rendered in the amounts of the net deficiencies paid, plus statutory interest, and costs. The principal amounts have been stipulated by the parties as being in the following:

| | |
|---|---|
| James Richard Killion and Henrietta Killion, his wife | $1,295.39 |
| Ernest G. Wilson and Mary Ann Wilson, his wife | 3,105.38 |
| C. E. Rone | 1,312.41 |
| Donald Rone and Bethel Rone, his wife | 333.17 |

Plaintiffs should also be awarded interest, which shall be calculated and agreed upon by the parties within 30 days from this date and they shall prepare a judgment to be entered in accordance with this memorandum.