MOTHER LODE COALITION MINES CO.
v. COMMISSIONER OF INTERNAL
REVENUE.
No. 47.

Circuit Court of Appeals, Second Circuit.
Argued Jan. 13, 1942.

Decided Feb. 5, 1942.

Paul E. Shorb and Charles A. Horsky, both of Washington, D. C. (Covington, Burling, Rublee, Acheson & Shorb, of Washington, D. C., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Gerald L. Wallace, and Carlton Fox, Sp. Assts. to the Atty. Gen., for respondent.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The question presented is whether the petitioner is entitled under section 114(b)(4) of the Revenue Act of 1934, 48 Stat. 710, 26 U.S.C.A.Int.Rev.Acts, page 702, to take a deduction in its 1935 return for percentage depletion upon its copper min-

ing property. Disallowance of the deduction resulted in the deficiency tax complained of. The Board has sustained the commissioner's ruling.

The petitioner was the owner of a copper mine located in Alaska and was engaged in the business of mining and selling copper. Prior to 1932 a depletion allowance in the case of metal mines had to be computed on the basis of cost or discovery value. By section 114(b) (4) of the Revenue Act of 1932, 47 Stat. 203, 26 U.S.C.A. Int.Rev.Acts, page 520, a new method of computation was introduced based on a percentage "of the gross income from the property during the taxable year." (but not to exceed 50 per cent. of net income therefrom computed without allowance for depletion), and a taxpayer making a return for 1933 as to a property was required to state whether he elected to have the depletion allowance for such property "for succeeding taxable years" computed with or without reference to percentage depletion. In its income tax return for 1933 the petitioner elected percentage depletion "for the year 1933 and thereafter." The provisions of the 1932 Act were reenacted, with slight modifications, in section 114(b) (4) of the Revenue Act of 1934, 48 Stat. 710. During the year 1934 the petitioner mined no copper. Its mine was shut down but it sold certain copper on hand which it had mined in prior years. Its return for 1934 showed a net loss and made no reference whatever to depletion. The commissioner made no adjustments in the 1934 return. In 1935 the petitioner had a profit from its mining operations and in its return for that year reported net income of $63,466 after deducting $25,276.88 for percentage depletion. The return stated: "Under the provisions of Section 114(b) (4) of the Revenue Act of 1932 the taxpayer elected to deduct depletion on the percentage basis for the year 1933 and thereafter." The commissioner disallowed any deduction for depletion on the ground that section 114(b) (4) of the Act of 1934, required a new election to be stated in the 1934 return,[1] and the petitioner's failure to do so made operative the requirement that depletion allowance for succeeding taxable years be computed without reference to percentage depletion. Since cost basis depletion had been fully recovered by 1925, it is conceded that no deduction on that basis was allowable.

The petitioner's first contention is that having made its election under the 1932 Act it was not required to make a fresh election under the 1934 Act. This flies directly in the teeth of the statutory language quoted in the margin.[2] That language is mandatory. A taxpayer desir-

---

[1] Before the Board the petitioner contended that an amended return for 1934, filed in 1939, constituted an effective election under the 1934 Act. This contention has not been urged before us, doubtless because of Riley Co. v. Commissioner, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36. See also Scaife Co. v. Commissioner, Dec. 22, 1941, 314 U.S. ——, 62 S.Ct. 338, 86 L.Ed. ——.

[2] "§ 114. Basis for Depreciation and Depletion.

\* \* \* \* \* \*

"(b) Basis for Depletion.—

\* \* \* \* \* \*

"(4) Percentage depletion for coal and metal mines and sulphur. The allowance for depletion under section 23(m) shall be, in the case of coal mines, 5 per centum, in the case of metal mines, 15 per centum, and, in the case of sulphur mines or deposits, 23 per centum, of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property. A taxpayer making his first return under this title in respect of a property shall state whether he elects to have the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion, and the depletion allowance in respect of such property for such year shall be computed according to the election thus made. If the taxpayer fails to make such statement in the return, the depletion allowance for such property for such year shall be computed without reference to percentage depletion. The method, determined as above, of computing the depletion allowance shall be applied in the case of the property for all taxable years in which it is in the hands of such taxpayer, or of any other person if the basis of the property (for determining gain) in his hands is, under section 113, determined by reference to the basis in the hands of such taxpayer, either directly or through one or more substituted bases, as defined in that section."

ing percentage depletion "shall state" his election in "his first return under this title in respect of a property." Section 1, 48 Stat. 683, 26 U.S.C.A.Int.Rev.Acts, page 664, makes clear that the "first return under this title" is the return for 1934. Hence, if the petitioner's 1934 return was "in respect of" the mine—a matter to be discussed later—a statement of election was required and a failure to make it deprived the petitioner of the privilege of claiming percentage depletion in subsequent years. Section 114(b) (4) makes no exception in favor of taxpayers who had elected pursuant to the 1932 Act and the courts are not at liberty to imply exceptions in order to avoid harsh results. The privilege was granted "as a matter of legislative grace; the election had to be made in the manner and in the time prescribed by Congress." Riley Co. v. Commissioner, 311 U.S. 55, 58; 61 S.Ct. 95, 97, 85 L.Ed. 36. The petitioner argues that the legislative history of the section indicates that the new election was intended to be permissive rather than mandatory because the congressional reports referred to it as "permitted" to the taxpayer instead of "required" of him. S.Rep. 558, 73rd Cong., 2d Sess. p. 36; H.Rep. 704, 73rd Cong., 2d Sess. p. 29. Such a tenuous inference can have no weight as against the unambiguous statutory language. Concededly no case supports the petitioner's contention and a prior decision of the Board had rejected it. C. H. Mead Coal Co. v. Commissioner, 38 B.T.A. 1163, reversed on another point in 4 Cir., 106 F.2d 388.

A second string to the petitioner's bow is the contention that its return for 1935 was its "first return" within the meaning of the 1934 Act. Assuming that a fresh election was required under that act, as we have held in the previous point, the petitioner argues that Congress must have meant by "first return" the first in which a depletion deduction could be claimed. It urges that since depletion on the cost basis had been previously exhausted and its 1934 return showed a net loss which precluded taking a depletion deduction on the percentage basis, there was no occasion to state an election in that return; accordingly, its 1935 return was the "first return" and this did elect percentage depletion.

But the statutory language as construed by the Treasury Regulations will not support this contention.

■ Section 114(b) (4) does not speak of the "first return made by a taxpayer having net income derived from a property." It requires the election to be stated in the first return made "in respect of a property." The commissioner contends, and we think rightly, that the 1934 return was a return "in respect of" the petitioner's mine. It reported gross income derived therefrom by sales of ore previously mined and it claimed deduction of expenditures on account of the property. The commissioner's position is supported by the regulations promulgated under the 1934 Act. By Article 23(m)5 of Treasury Regulations 86 the taxpayer is required in his first return for a taxable year beginning after December 31, 1933 to "state as to each property with respect to which the taxpayer has any item of income or deduction whether he elects to have the depletion allowance for each such property for the taxable year computed with or without reference to depletion allowance." Being phrased in general terms, the statute is an appropriate subject for interpretative administrative regulation. Helvering v. R. J. Reynolds Co., 306 U.S. 110, 114, 59 S.Ct. 423, 83 L.Ed. 536. In our opinion Article 25(m)5 as above quoted is a reasonable one.[3] Percentage depletion is computed upon gross income although the permissible allowance therefor is limited to a percentage of the taxpayer's net income. Cost depletion is not so limited. Therefore a taxpayer who reports gross income from a mining property may properly be required to state his election as to the method of computing depletion allowance for such property, even though he can get no benefit in that year from electing percentage depletion, because the statute makes his election controlling in future taxable years and imposes upon him an election of the method of cost depletion if he fails to state an election of percentage depletion. It must be obvious, we think, that if the petitioner's mine had had depletable cost in 1934, the petitioner would have been put to an election in its return for that year although no net income was reported. The fact that in the case of certain taxpayers,

---

[3] The same construction of identical language in the Revenue Acts of 1936, 1938 and the Internal Revenue Code has been repeated in Article 23(m)5 of Treasury Regulations 94 and 101 and section 19.23(m)5 of Treasury Regulations 103.

like the petitioner, cost depletion has previously been exhausted can have no bearing, so far as we are able to see, upon either the construction of the statutory phrase "first return * * * in respect of" the property or the reasonableness of the administrative interpretation given it by the regulation under discussion. Moreover, the construction for which the petitioner contends would introduce administrative difficulties. If a return showing no net income is not a "first return" when filed, does it become one years later if the commissioner shall make adjustments which result in disclosing net income? Cf. Kehoe-Berge Coal Co. v. Commissioner, 3 Cir., 117 F.2d 439. Section 114(b) (4) will be much simpler in administration under the commissioner's interpretation. Tax officials will look first to the taxpayer's 1934 return. If this reports items of gross income from a mining property they need look no further to ascertain the method of computing depletion allowance for such property in future years; if it does not, then they must find the "first return in respect of" such property in some later year. In our opinion the Board correctly held that the petitioner was required to state its election in its 1934 return.

This view is not the one adopted by the Third Circuit in Pittston-Duryea Coal Co. v. Commissioner, 117 F.2d 436. That opinion, however, does not discuss the phrase "first return * * * in respect of a property" nor Article 23(m)5 of Treasury Regulations 86. For the reasons already stated we must with all deference decline to follow it.

Order affirmed.