## J. E. RILEY INVESTMENT CO. *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 50.   Argued October 25, 1940.—Decided November 12, 1940.

---

[3] 38 B. T. A. 1355.
[4] 105 F. 2d 740.
[5] *Northwest Steel Rolling Mills* v. *Commissioner,* 110 F. 2d 286.
[6] 309 U. S. 692; *post,* p. 629.

*Mr. Robert Ash* for petitioner.

*Mr. Richard H. Demuth,* with whom *Solicitor General Biddle, Assistant. Attorney General Clark,* and *Messrs. Sewall Key* and *Joseph M. Jones* were on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered· the opinion of the Court.

This case is here on certiorari to resolve the. conflict of. the decision below (110 F. 2d 655) with *C. H. Mead Coal Co.* v. *Commissioner,* 106 F. 2d 388.

Petitioner is engaged in the business of. mining gold at Flat, Alaska. The winter mail service to and from that remote place was so uncertain and slow that, in order to avoid delinquency in income tax returns, petitioner's officers were accustomed to use the forms for an earlier year. Consequently petitioner's original return for the calendar year 1934 was filed on a 1933 form which had been mailed to petitioner by the Collector at Tacoma, Washington. This return was executed on January 2, 1935, and reached Tacoma on January 29, 1935. When it was executed petitioner did not know of the provision [1] in the Revenue

---

[1] Section 114 (b) (4)· provided:

"The allowance for depletion under section 23 (m) shall be, in the. case of coal mines, 5 per centum, in the case of metal mines, 15 per centum, and, in the case of sulphur mines or deposits, 23 per centum, of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the ·

Act of 1934 (48 Stat. 680) allowing percentage depletion. But petitioner did know that unless the law had been changed it was not entitled to depletion, as it had no basis for cost depletion. The Collector in sending the 1933 forms had not advised petitioner with respect to percentage depletion. And it was found that if petitioner had known of the statutory provision for percentage depletion, it would have elected to take advantage of it. Petitioner first actually learned of the provision in August, 1935. On March 3, 1936, petitioner filed an amended return for 1934 upon which a deduction of percentage depletion was taken; and it asked for a refund. The Board of Tax Appeals upheld the Commissioner's ruling denying percentage depletion and the Circuit Court of Appeals affirmed.

Sec. 114 (b) (4) of the 1934 Act required the taxpayer to elect in his "first return" whether the depletion allowance was to be computed with or without regard to percentage depletion. The method so elected is applicable not only to the year in question but to all subsequent taxable years.

We think that petitioner's amended return, filed on March 3, 1936, was not a "first return" within the meaning

property. A taxpayer making his first return under this title in respect of a property shall state whether he elects to have the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion, and the depletion allowance in respect of such property for such year shall be computed according to the election made. If the taxpayer fails to make such statement in the return, the depletion allowance for such property for such year shall be computed without reference to percentage depletion. The method, determined as above, of computing the depletion allowance shall be applied in the case of the property for all taxable years in which it is in the hands of such taxpayer, or of any other person if the basis of the property (for determining gain) in his hands is, under section 113, determined by reference to the basis in the hands of such taxpayer, either directly or through one or more substituted bases, as defined in that section."

of § 114 (b) (4). By § 53 (a) (1) of the 1934 Act, the return was due on or before March 15, 1935. By § 53 (a) (2) the Commissioner was empowered to grant a reasonable extension for filing returns [2] but, so far as applicable here, not exceeding six months. *Haggar Co.* v. *Helvering*, 308 U. S. 389, would compel the conclusion that had the amended return been filed within the period allowed for filing the original return, it would have been a "first return" within the meaning of § 114 (b) (4). But we can find no statutory support for the view that an amendment making the election provided for in that section may be filed as of right after the expiration of the statutory period for filing the original return.

We are not dealing with an amendment designed merely to correct errors and miscalculations in the original return. Admittedly the Treasury has been liberal in accepting such amended returns even though filed after the period for filing original returns.[3] This, however, is not a case where a taxpayer is merely demanding a correct computation of his tax for a prior year based on facts as they existed. Petitioner is seeking by this amendment not only to change the basis upon which its taxable income was computed for 1934 but to adopt a new method of computation for all subsequent years. That opportunity was afforded as a matter of legislative grace; the election had to be made in the manner and in the time prescribed by Congress. The offer was liberal. But the method of its acceptance was restricted. The offer permitted an election only in an original return or in a timely amendment. An amendment for the purposes of § 114 (b) (4) would be timely only if filed within the

---

[2] See Treasury Regulations No. 86, Arts. 53–1—53–4 inc.

[3] See, for example, Treasury Regulations No. 86, Art. 43–2, governing the filing of amended returns for the purpose of deducting losses which were sustained during a prior taxable year. Cf. Union Metal Mfg. Co., 1 B. T. A. 395.

period provided by the statute for filing the original return. No other time limitation would have statutory sanction. To extend the time beyond the limits prescribed in the Act is a legislative, not a judicial, function.

Strong practical considerations support this position. If petitioner's view were adopted, taxpayers with the benefit of hindsight could shift from one basis of depletion to another in light of developments subsequent to their original choice. It seems clear that Congress provided that the election must be made once and for all in the first return in order to avoid any such shifts. And to require the administrative branch to extend the time for filing on a showing of cause for delay would be to vest in it discretion which the Congress did not see fit to delegate.

Petitioner urges that this result will produce a hardship here. It stresses the fact that it had no actual knowledge of the new opportunity afforded it by § 114 (b) (4) of the 1934 Act and that equitable considerations should therefore govern. That may be the basis for an appeal to Congress in amelioration of the strictness of that section. But it is no ground for relief by the courts from the rigors of the statutory choice which Congress has provided.

Finally, petitioner asserts that we cannot consider the question of the timeliness of the amended return since before the Board of Tax Appeals and the Circuit Court of Appeals respondent urged only that petitioner's claim was based upon an amended, rather than an original, return. But even on the assumption that that issue did not embrace the question of timeliness, the Circuit Court of Appeals was justified in affirming the decision of the Board of Tax Appeals. Where the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave a wrong reason for its action. *Helvering* v. *Gowran*, 302 U. S. 238, 245–246.

*Affirmed.*