J. Piner Powell v. Commissioner.
Powell v. Commissioner
Docket No. 90726.
United States Tax Court
T.C. Memo 1962-195; 1962 Tax Ct. Memo LEXIS 112; 21 T.C.M. (CCH) 1056; T.C.M. (RIA) 62195; August 16, 1962
*112 Held: (1) Petitioner is entitled to deduct business entertainment expenses in each of the taxable years somewhat greater than the amounts determined by respondent, Cohan v. Commissioner, 39 F. 2d 540; (2) where respondent has determined that secured notes received by petitioner have no fair market value, proper method for reporting petitioner's income from the notes is on a yearly collections received basis to the extent that such collections exceed his costs; and (3) additions to tax under section 6653 (a), I.R.C. 1954, disapproved. Code E. Edwards, Esq., for the petitioner. Harold D. Rogers, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax and additions to tax under section 6653(a), Internal Revenue Code of 1954, for the years 1955 and 1956, as follows: Addition to tax
Year
Deficiency
Sec. 6653(a)
1955
$1,314.73
$65.74
1956
1,329.07
66.45 Respondent determined the deficiency for 1955 as follows: Taxable income as shown on return
$ 9,326.74
Unallowable deduction: (a) Business expenses
$8,838.83
Reduction of income: (b) Gross income
5,738.60
Net addition
3,100.23
Taxable income adjusted
$12,426.97
Adjustments (a) and (b) are *113 explained in the deficiency notice as follows: (a) It is determined that you have not used a consistent method of accounting in computing income for tax purposes, and, under the provisions of section 446 of the Internal Revenue Code, that the proper method for clearly reflecting your income is the cash receipts and disbursements method. Accordingly, it is determined that trade and business deductions allowable in your Federal income tax return for the taxable year 1955 amounted to $69,808.24 under section 62(1) of the Internal Revenue Code of 1954. Income is increased as follows: Business expenses reported
$78,647.07
Business expenses corrected
69,808.24
Addition to income
$ 8,838.83 (b) Likewise, it is determined that gross income derived from business reportable on your Federal income tax return for the taxable year 1955 amounted to $85,035.21 within the purview of section 61(a)(2) of the Internal Revenue Code of 1954. Income is decreased as follows: Gross income reported
$90,773.81
Gross income corrected
85,035.21
Reduction of income
$ 5,738.60
The deficiency for 1956 was determined in the same manner as is above stated for the year 1955, except to correct a mathematical error of $1,000.01. *114 The two adjustments which were made to the net income which petitioner had reported in his 1956 return are explained in the same manner as for 1955. The only difference is as to amounts. Therefore, we are not setting out in detail here these adjustments for 1956. The issues presented for our decision are: (1) Whether petitioner is entitled to deduct additional business and sales entertainment expenses for the years 1955 and 1956 in the amounts of $840 and $648, respectively; (2) whether petitioner properly reported income resulting from the sale of real property in the taxable years 1955 and 1956, where the consideration he received consisted of cash and secured second lien notes; and (3) whether any part of the deficiencies was due to petitioner's negligence or an intentional disregard of rules and regulations under the provisions of section 6653(a). Findings of Fact A stipulation of facts and supplemental stipulation of facts, together with exhibits attached thereto, were filed by the parties and are incorporated herein by this reference. Petitioner, an individual residing in Fort Worth, Texas, timely filed his income tax returns for the calendar years 1955 and 1956 with the district *115 director of internal revenue at Dallas, Texas. Petitioner is an attorney and member of the Bar of the State of Texas. He was formerly employed by the Internal Revenue Service for a short time. Presently he is engaged in the real estate and insurance business and has conducted this business since prior to 1948. In his 1955 and 1956 income tax returns petitioner claimed entertainment expense deductions in the amounts of $1,050 and $810, respectively. Upon audit of petitioner's 1955 and 1956 income tax returns respondent disallowed $840 of the claimed entertainment expense, or 80 percent of $1,050 for 1955, and he disallowed $648 of the claimed entertainment expense, or 80 percent of $810 for 1956. During the taxable years 1955 and 1956 petitioner did not keep any records or memoranda in support of the respective amounts of $1,050 and $810 claimed as entertainment expenses. Petitioner had a sales force of approximately 15 people and from time to time he paid for their meals and refreshments served during business meetings in restaurants and cafeterias. He also, on occasion, took prospective clients and customers to lunch. On two occasions yearly petitioner took all his employees and their *116 families to dinner. We find that petitioner expended for entertainment of his employees and occasionally for some of his customers the sums of $525 in 1955 and $405 in 1956. Since 1948 petitioner accepted first and second lien notes from various persons in connection with his realty business. The notes were payable in periodic payments, each payment being part interest and the balance payment on principal. The amounts of interest received by petitioner were accurately reported in the taxable years received. The notes (less petitioner's cost) represented petitioner's profit on the sale of real estate. All notes received by petitioner in 1948 were reported as gross income on petitioner's 1948, 1949, 1950, 1951, 1952, and 1953 returns in the amount of the collections made in those years, after first reducing his basis in the notes to zero. The remaining unpaid balance of the principal of the notes received in 1948 was reported as gross income on petitioner's 1954 return. All notes received by petitioner in the taxable year 1949 were reported as gross income on petitioner's 1949, 1950, 1951, 1952, and 1953 returns in the amount of the collections made in those years, after first reducing *117 his basis in the notes to zero. The remaining unpaid balance of the principal of the notes accepted in 1949 was reported as gross income on petitioner's 1954 return. All notes received by petitioner in the taxable year 1950 were reported as gross income on petitioner's 1950, 1951, 1952, and 1953 returns in the amount of the collections made in those years, after first reducing his basis in the notes to zero. The remaining uncollected balance of the principal of the notes accepted in 1950 was reported as gross income on petitioner's 1954 return. All notes received by petitioner in the taxable year 1951 were reported as gross income on petitioner's 1951, 1952, and 1953 returns in the amount of the collections made in those years, after first reducing his basis in the notes to zero. One-half of the remaining unpaid balance of the principal of the notes accepted in 1951 was reported as gross income on petitioner's 1954 return. All notes received by petitioner in the taxable years 1952, 1953 (except for four notes), and 1954 were reported on petitioner's 1952, 1953, and 1954 returns in the amount of the collections made in those years on said notes, after first reducing his basis in the *118 notes to zero. Four notes accepted by petitioner in 1953 were reported as gross income on his 1953 return in the amount of each note's full face value to the extent that the full face value exceeded the cost of acquisition of each of the said four notes. Petitioner accepted between 150 and 160 second lien notes in the year 1953. For the taxable years 1948 through 1953, petitioner reported his income on notes received in those years (except for four notes in 1953) by treating all payments as a return of capital until the collections exceeded his basis and such excess was reported as income when collected. The petitioner did not, with respect to every note, recover his basis from collections in 1952, 1953, and 1954 on notes received in those years. In the taxable years prior to 1955, commissions paid to salesmen were deducted as current expenses and with respect to some of the notes were also included in the basis of the notes received in those years. In arriving at the total gross income in the notice of deficiency for the taxable years 1955 and 1956, respondent reduced petitioner's basis in the notes carried into those years by the amount of the commissions previously deducted as business *119 expenses by petitioner. In 1955, petitioner received eight second lien notes which he reported on his original return at one-half of their full face value to the extent that one-half the full face value exceeded his basis in the notes. Petitioner also reported as gross income one-half of the unpaid balance of the principal of all notes accepted by him in the taxable years 1951, 1952, 1953 (except for the four notes), and 1954. Three of four notes which were received by petitioner in 1956 were reported as gross income on his original return in the following amounts: Full Face Value
Amount Reported
Less Cost
as Gross Income
$173.74
$ 18.75
644.79
372.39
701.17
175.34 Petitioner also reported as gross income on his return for 1956 one-half of the unpaid balance of the principal of all notes received by him in 1951. Petitioner did not report as gross income in his original returns for 1955 and 1956 any of the collections received in 1955 and 1956 on notes received by petitioner in 1948, 1949, and 1950. In his notice of deficiency respondent has included as gross income only the amount of collections received by petitioner in 1955 and 1956 to the extent that said collections exceeded petitioner's *120 cost in any of said notes. Petitioner kept single entry books and records and he used the cash receipts and disbursements method. The petitioner has never applied for or received permission from the Commissioner to change his method of accounting. The audit of petitioner's 1955 and 1956 income tax returns was commenced by the examining internal revenue agent after April 15, 1958. In 1959, petitioner filed a Form 1040 for 1955 designated as "Amended Report Rework by Mrs. Henry." At the same time petitioner filed a schedule entitled "Rework by Mrs. Henry" wherein he recomputed his income tax for the year 1956. In this amended return for 1955 filed September 13, 1959, petitioner showed a taxable income of $945 as contrasted with the taxable income of $9,326.74 shown on his original return. In the schedule for 1956 entitled "Rework by Mrs. Henry" filed on the same date in 1959 as petitioner filed the amended return for 1955, net profits from business operations were shown as $472.48 as contrasted with taxable income for 1956 of $8,942.77 shown on his original return for 1956. Opinion 1 - Entertainment Expenses BLACK, Judge: Only $840 and $648 of the $8,838.83 and $3,233.19 business expense *121 adjustments for 1955 and 1956, respectively, are contested. These amounts represent the disallowed portions of petitioner's claimed entertainment expenses of $1,050 and $810 for the taxable years 1955 and 1956, respectively. The respondent has allowed 20 percent of the entertainment expenses deducted by petitioner in each of the taxable years. There appears to be no question as to whether or not the entertainment expenses would be properly deductible as business expenses and the sole question is whether or not petitioner has adequate proof as to the amounts of the deductions. Petitioner did not keep any detailed record of these expenditures. He testified however, at the trial and his testimony was to the effect that on numerous occasions he paid for meals and refreshments for his employees served at business meetings and that he also took some of his customers to luncheon. He said that the total amounts of all these expenditures for the year 1955 were as much as $1,050 and $810 in 1956. In the absence of detailed records we have made a finding of fact that petitioner expended for entertainment expenses in 1955, $525 and in 1956, $405. These respective amounts are 50 percent of the *122 amounts claimed by petitioner on his returns for those years. We have made our findings of fact as to the years 1955 and 1956 upon the strength of petitioner's general testimony and the application of the rule announced in Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). The amounts which we have found were expended in each of the taxable years should be allowed as deductions instead of the amounts allowed in the deficiency notice. 2 - Realized Income from the Sale of Property The next issue presented concerns petitioner's reporting of income resulting from the sale of real property where he received cash and secured notes, most of them second lien notes, in consideration for the various properties he sold. The amount of interest collected on the notes and the question of the taxability of such interest is not in issue. A good deal is said in the stipulation of facts concerning petitioner's income tax return of 1954 and what income was reported in that return. However, we do not have the year 1954 before us in this proceeding and we shall not undertake to decide here any question as to petitioner's reporting of income in 1954. The question that we have to decide is what income *123 he should have reported in 1955 and 1956 from his business transactions in those years and from collections made in 1955 and 1956 on business transactions in prior years, he being on the cash basis. Upon audit of petitioner's 1955 and 1956 income tax returns respondent determined that petitioner had not used a consistent method of reporting income and that pursuant to the provisions of section 446[1] the proper method of reporting income was the cash receipts and disbursements method. As we construe the pleadings, the issue involved is whether or not petitioner, in reporting the proceeds derived from the sale of property and specifically from the income derived from secured notes, has employed a method of accounting which clearly reflects income. However, the crucial question does not appear to involve section 446 as much as it does sections 451(a) and 1001(b). [2] *125 Pursuant to section 1001(b), the amount realized from the sale of property is the sum of any money received plus the fair market value of property other than money received. It has been stipulated that petitioner kept his books and records using the cash receipts and disbursements method and that he has never applied for or *124 received permission from the Commissioner to change his method of accounting. Respondent would have petitioner report income in the manner petitioner consistently used from 1948 to 1952. It would only be proper for petitioner to report on a basis of collections received after recovery of his costs in the notes where the secured notes have no fair market value. Where the notes have no fair market value the notes do not represent realized taxable *126 income in the year of acceptance within the meaning of section 1001(b); see section 1.453-6(a), Income Tax Regs.; [3] *127 cf. Nina J. Ennis, 17 T.C. 465 (1951), appeal dismissed. There is no evidence presented by petitioner as to whether or not the notes had a fair market value. Where the burden of proof in a Tax Court proceeding as here is on the taxpayer, the value of the notes, whether secured or unsecured, received as consideration for a sale will be presumed to be the amount determined by the respondent, Williams v. Commissioner, 45 F. 2d 61 (C.A. 5, 1930), affirming 16 B.T.A. 109 (1929). Respondent, in essence, has determined that there is no fair market value for the secured notes and that the taxpayer should only report income based on collections made after he has recovered his basis in the notes. In each of the taxable years the Commissioner has decreased the amounts of petitioner's gross income as reported on his returns. The deficiencies arise from the disallowance of certain business expense deductions which are not contested herein except as to entertainment expenses. These facts are disclosed by an examination of the deficiency *128 notice. Since the respondent's determinations are presumed to be correct we must sustain respondent and hold that petitioner should report only on a basis of collections received after he has recovered his costs. He has offered no evidence as to the fair market value of the notes received to justify the method of reporting on that basis. As we have heretofore pointed out, in his notice of deficiency respondent included in gross income only the amount of collections made by petitioner in the taxable years to the extent that said collections exceeded petitioner's cost in any of the notes. Petitioner's prior taxable years and how he treated his taxable income in those years are not before us. We confine our conclusions strictly to the taxable years 1955 and 1956 and as to those years we find respondent's determination that petitioner should report on a basis of collections after costs should be sustained. Perhaps we should mention the amended returns filed by petitioner in 1959 in which he undertook to substantially reduce the income reported by him and we have not discussed these amended returns because they were not filed until long after the due date of the filing of the original returns. *129 They did not undertake to correct mere mathematical errors in the original returns, but to make substantial changes in them. This is not permissible, Riley Co. v. Commissioner, 311 U.S. 55 (1940). 3 - Negligence The third and final issue before us is whether or not any part of the deficiencies was due to negligence or intentional disregard of rules and regulations as provided in section 6653(a). [4] *130 Respondent in his deficiency notice stated: It is determined that a part of your income tax deficiency is due to negligence, or intentional disregard of the rules and regulations, and a penalty equal to 5% of the deficiency is added to your tax as provided by section 6653(a) of the Internal Revenue Code of 1954. This determination was made for both years, 1955 and 1956. The petitioner testified at length during the trial as to Issues 1 and 2 and our conclusions have not been in accordance with his contentions. However, considering all the evidence in the case we are convinced that no part of the deficiencies is due to negligence or intentional disregard of rules and regulations. We hold in favor of petitioner as to this Issue 3. Decision will be entered under Rule 50. Footnotes
1. SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING. (a) General Rule. - Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. (b) Exceptions. - If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income. (c) Permissible Methods. - Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting - (1) the cash receipts and disbursements method; (2) an accrual method; (3) any other method permitted by this chapter; or (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate. ↩
2. SEC. 451. GENERAL RULE FOR TAXABLE YEAR OF INCLUSION. (a) General Rule. - The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period. SEC. 1001. DETERMINATION OF AMOUNT OF AND RECOGNITION OF GAIN OR LOSS. * * *
(b) Amount Realized. - The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received. In determining the amount realized - (1) there shall not be taken into account any amount received as reimbursement for real property taxes which are treated under section 164(d) as imposed on the purchaser, and (2) there shall be taken into account amounts representing real property taxes which are treated under section 164(d) as imposed on the taxpayer if such taxes are to be paid by the purchaser.↩
3. § 1.453-6 Deferred-payment sale of real property not on installment method. (a) Value of obligations. (1) In transactions included in paragraph (b)(2) of § 1.453-4, that is, sales of real property involving deferred payments in which the payments received during the year of sale exceed 30 percent of the selling price, the obligations of the purchaser received by the vendor are to be considered as an amount realized to the extent of their fair market value in ascertaining the profit or loss from the transaction. Such obligations, however, are not considered in determining whether the payments during the year of sale exceed 30 percent of the selling price. (2) If the obligations received by the vendor have no fair market value, the payments in cash or other property having a fair market value shall be applied against and reduce the basis of the property sold and, if in excess of such basis, shall be taxable to the extent of the excess. Gain or loss is realized when the obligations are disposed of or satisfied, the amount thereof being the difference between the reduced basis as provided in the preceding sentence and the amount realized therefor. Only in rare and extraordinary cases does property have no fair market value.
4. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.